| iBOWES, Judge.
This appeal is taken from a motion granting summary judgment in favor of the defendant, Life General Security Insurance Company (“LGS”). For the following reasons we annul and set aside the judgment and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

William “Billy” Graham (“Graham”) Benefit Services of Louisiana Inc. (“Benefit”) are agents/brokers for various insurance companies. For purposes of this action, Graham has stipulated that he and Benefit are one and the same. Graham (Benefit) were requested to assist C & W in ^purchasing health insurance in 1988; at that time, Graham helped C & W to obtain coverage under the Western Pacific Employers Trust. Their rates rose, prompting C & W to find another carrier. On behalf of C & W, Graham sought another health insurer. In November 1989, Graham became a licensed agent of Life General Security (LGS). Subsequently, Graham was notified by LGS that it had accepted the health insurance application submitted by C & W, and would issue a health insurance policy for their employees effective January 1, 1990. Diana Wasser-man, an employee/owner of C & W, was a potential insured, and her husband Martin Wasserman (also one of the owners of the company) would also be covered through the policy.
LGS received signed enrollment cards from C & W employees, but the evidence of insurability questionnaire and portions of the cards, involving information concerning preexisting medical conditions, were blank. Eventually, the forms were completed and returned to LGS.
The only form relevant to this appeal is the form concerning Diana Wasserman, the secretary for C & W, who requested coverage for herself and her husband, Martin.
The LGS underwriting division reviewed the enrollment cards and evidence of insura-bility forms which it received and, on January 19,1990, wrote to Graham that the group had been approved for coverage under | ijgroup policy #409129 effective January 1, 1990. The letter reiterated “Evidence of In-surability will be required always.”
On January 23, 1990, LGS mailed to Graham individual certificates for coverage for distribution to C & W employees, as well as administrative information.
On February 7, 1990, Martin Wasserman was admitted to East Jefferson General Hospital as an Emergency Room patient, and was subsequently hospitalized and treated for an ischemic coronary heart disease. By *764 pass surgery was performed on February 12, 1990.
In March and April 1990, LGS received claims for medical benefits relative to cardiac bypass surgery performed on Martin Was-serman in February 1990. Because these claims were submitted within the contestable period of the policy, LGS began an investigation into his medical history.
Based on its investigation, on August 31, 1990, LGS wrote to Mrs. Wasserman and informed her that it was rescinding coverage on her and her dependent effective January 1, 1990. LGS had discovered that Mr. Was-serman had been diagnosed with severe hypertension and had incurred medical expenses in excess of $5,000.00 within 24 months of the application date. These facts, had they been known to LGS, would have precluded coverage under the policy and the policy would never have been issued to Mr. Wasserman. LGS refunded all premiums that C & W had paid on the Wasserman’s behalf. Mrs. Wasserman was advised that, with | ¿respect to the evidence of insurability forms, certain material facts were omitted and that, had LGS known those facts at the time it requested the statement, it would not have issued coverage on her husband.
The Wassermans sued LGS for benefits due under the group insurance policy. In their petition, they brought claims against Benefit Services of Louisiana, Inc., Billy Graham, and LGS. It was alleged that Graham had submitted false information on the evidence of insurability forms, without the Was-serman’s knowledge, causing LGS to deny the claim for Mr. Wasserman’s bypass surgery. The Wassermans further alleged LGS was bound by the actions of its purported agent, Graham, to pay the benefits claimed.
LGS filed a cross-claim against Graham alleging he did not comply with their requests to obtain information necessary to process applications of C & W employees for coverage under the policy and that Graham failed to provide full and complete information to LGS about the health of plaintiffs in order that LGS could determine whether they were eligible for coverage under the policy.
Prior to trial, a settlement was reached between the Wassermans and LGS. According to the terms of the settlement agreement, LGS reimbursed the Wassermans for their out-of-pocket expenses and paid what was owed to the healthcare provider. LGS paid out a total of $67,715.00. In connection | gwith the settlement, the Wassermans assigned any rights, claims and causes of action which they might have against Graham to LGS.
LGS moved for summary judgment on its cross-claim in order to recover the losses it incurred in settling the matter. Following a hearing, the trial court granted summary judgment in favor of LGS and against Graham on the cross-claim, in the full amount paid by LGS to the Wassermans, $67,715.12. Graham appeals.
Graham avers on appeal that the trial court erred in determining there were no genuine issues of material fact and that the mover was entitled to judgment as a matter of law.

ANALYSIS

Our Supreme Court has recently summed up the applicable jurisprudence with regard to summary judgments in Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, as follows:
Summary judgments are reviewed on appeal de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. ‘Stated conversely, [summary judgment] should be denied if there is (1) a genuine issue of fact and (2) it is material to the case.’
A ‘genuine issue’ is a ‘triable issue.’ More precisely, ‘[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary | {judgment is the means for disposing of such meretricious disputes.’ In determining whether an issue is ‘genuine,’ courts cannot consider the merits, make *765 credibility determinations, evaluate testimony or weigh evidence. ‘Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact.’
A fact is ‘material’ when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. ‘[F]acts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.’ Simply put, a ‘material’ fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.
Because the summary judgment device deprives a party of a trial on the merits, Louisiana courts ‘cautiously and sparingly[1] employ it. Indeed, as we recently recognized, in Louisiana ‘there is a strong preference for full trial on the merits in non-defamation cases.’
Summary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge and malice. As we put it in Penalber [v. Blount, 550 So.2d 577 (La.1989) ], summary judgment ‘is rarely appropriate for a determination based on subjective facts.’ Nonetheless, Louisiana courts have recognized that, while ‘rare’, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent.
Procedurally, the court’s first task on a motion for summary judgment is determining whether the moving party’s supporting documents — pleadings, depositions, answers to interrogatories, admissions and affidavits — are sufficient to resolve all material factual issues. LSA-C.C.P. Art. 966(B). ‘To satisfy this burden, the mover must meet a strict standard of [7showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact.’ In making this determination, the mover’s supporting documents must be closely scrutinized and the non-mover’s indulgently treated. Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in fight most favorable to the non-moving party.
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. LSA-C.C.P. Art. 967 outlines the non-moving party’s burden of production as follows:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
As this court has oft-stated, summary judgment may be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court. Likewise, summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts.
[Citations omitted],
In the present case, the trial court found that Graham and Benefit failed to point to any material facts and rested on mere denials. The court further stated:
IsLGS claims that Graham either actively or negligently omitted required information that would have disqualified the Was-sermans from coverage, and that Graham and Benefit Services are therefore liable for the subsequent medical payments.... Graham and Benefit Services claim that neither Graham nor Benefit Services personally received the Evidence of Insurability forms, and point to their Answer to Cross-Claim as evidence. However, LGS has submitted letters addressed to Graham *766 and Benefit Services that included the forms. Additionally, LGS points out in an affidavit (of Nathan Hays) that Graham is in fact the person who sent the completed forms to LGS. Graham and Benefit Services have rested on a denial in their answer, which is insufficient under La.C.C.P. article 967 to rebut LGS’s claim.
We find that the learned trial judge erred in two respects. First, the record contains an affidavit executed by Graham in connection with the motion for summary judgment which states that he never received from LGS any of the evidence of insurability forms for the employees to fill out and, in fact, he specifically denied ever receiving them from LGS. The affidavit states in pertinent part as follows:
... when LGS finally sent the E.O.I. forms, said forms were sent to the insured, C & W Carburetors, Inc, and not to its own licensed agent, Benefit Services of Louisiana Inc. or to affiant and ... [Graham] denies that he was sent or even received, by and from LGS, E.O.I. forms an [sic] affiant emphatically and categorically denies that he submitted false evidence or that he ever ‘deliberately misled’, or ‘misrepresented’ anything to LGS.
It is most apparent that Graham did not rest on mere denials in his answer, but did indeed submit an affidavit which clearly puts squarely at|9issue the material fact of whether or not he received and improperly filled out the insurability forms.
Second, it appears that the trial judge made a credibility finding in favor of LGS. Making such a credibility finding is not a proper function in the determination of a motion for summary judgment. Smith, supra. LGS claims that Graham is the party who filled out and returned the forms; Graham denies it in a sworn affidavit. Our examination of the record shows that the very material question of fact regarding who filled out these forms remains unresolved.
Since our review of the case reveals genuine issues of material fact still at issue, i.e., whether or not Graham received the insura-bility forms, and whether he erroneously filled them out and returned them to LGS and others not enumerated here. On the state of the evidence, we find that reasonable persons certainly could disagree as to the outcome of these issues. Viewing the evidence in the light most favorable to Graham, we must annul and set aside the granting of summary judgment.

DECREE

For the foregoing reasons, the summary judgment granted in favor of the cross-plaintiffs, LGS, is annulled and set aside, and the matter is remanded for further proceedings.
ANNULLED AND SET ASIDE AND CASE REMANDED.
GRISBAUM, J., dissents.

. There are excepts from the other employees of C & W concerning whether or not they signed the form in blank or filled out the pre-existing conditions questionnaire on their Evidence of Insurability forms. For the most part, some employees remember signing them, but their recollection seems insufficient about whether they answered the questions. Besides, their cards are irrelevant; the issue is whether Graham had knowledge of Martin Wasserman's health history-